440 F.Supp. 1193 (1977)
Michael FRIEMAN, M. D. and Allen S. Palmer, D. O., Plaintiffs,
v.
John D. ASHCROFT, Attorney General of State of Missouri, J. Brendan Ryan, Circuit Attorney of the City of St. Louis, Missouri, Defendants.
No. 76-616C(3).
United States District Court, E. D. Missouri, E. D.
November 28, 1977.
Frank Susman, Susman, Schermer, Willer & Rimmel, St. Louis, Mo., for plaintiffs.
Michael L. Boicourt, Asst. Atty. Gen., State of Missouri, Jefferson City, Mo., for defendants.
Before WEBSTER, Circuit Judge, and WANGELIN and NANGLE, District Judges.

MEMORANDUM
This matter is before the Court upon plaintiffs' motion for summary judgment. Plaintiffs, who are physicians, filed this suit seeking declaratory and injunctive relief against the enforcement of §§ 188.040 and 188.045, R.S.Mo. (1974). Jurisdiction is based upon the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343. A three-judge Court was empaneled on July 9, 1976.
Section 188.040 provides:

*1194 In every case where a live born infant results from an attempted abortion which was not performed to save the life or health of the mother, such infant shall be an abandoned ward of the state under the jurisdiction of the juvenile court wherein the abortion occurred, and the mother and father, if he consented to the abortion, of such infant shall have no parental rights or obligations whatsoever relating to such infant, as if the parental rights had been terminated pursuant to section 211.411 [sic] RSMo. The attending physician shall forthwith notify said juvenile court of the existence of such live born infant.[1]
Section 188.045 provides:
Any woman seeking an abortion in the state of Missouri shall be verbally informed of the provisions of section 188.040 by the attending physician and the woman shall certify in writing that she has been so informed.
Plaintiffs allege that they are physicians who perform abortions within the first twelve weeks of gestation; that the possibility of a live birth resulting from an abortion performed within the first twelve weeks is totally non-existent; that the legislation under attack herein, inhibits, chills, restrains, deters and precludes plaintiffs' patients from the full exercise of their constitutional rights; that the privacy of the physician-patient relationship is curtailed and chilled by this legislation, and that plaintiff-physicians are inhibited and precluded from the practice of medicine in their finest manner by the existence and application of this legislation.
In opposition to plaintiffs' motion for summary judgment, defendants have raised the question of standing. In Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) the Court noted that there were two standing issues presented in the context of a challenge to abortion-related legislation by physicians. The first issue is whether the physicians
. . . allege "injury in fact," that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction . . .. Id. at 112, 96 S.Ct. at 2873.
The second issue is whether the physicians should be allowed to assert the rights of third parties. In Singleton, the challenge was to legislation prohibiting the application of Medicaid benefits to abortions. The Court held that the physicians satisfied the first requirement of standing, the necessary concrete interest, since they would benefit monetarily if the statute were struck down. The Court then proceeded to determine that the physicians could assert the rights of their patients.
In Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), the Court held that Baird had standing to challenge a Massachusetts law prohibiting the dispensing of contraceptive devices in certain contexts since Baird had been convicted of violating that law. In Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), appellants were held to have standing as they, too, were convicted of violating a statute regulating contraceptives. In Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), a defendant was allowed to raise a constitutional challenge to a restrictive covenant where the defendant would suffer economic injury as a result of the suit. In Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) a private school was allowed to assert the rights of parents and guardians where the school's standing was based on its property rights. In all these cases, the party asserting the constitutional challenge had standing in his own right; it was only after this standing was determined that the Court determined whether the rights of third parties could be asserted.
In N.A.A.C.P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Court did not determine the standing of the N.A.A.C.P. in advance of a consideration of its ability to assert the rights of its members. This case is distinguishable, however. *1195 The N.A.A.C.P. was an association whose members acted as a body, and thus the association and its members were identical. Additionally, the Court noted that in the context that existed therein, the members would lose the constitutional right asserted "at the very moment of its assertion". Id. at 459, 78 S.Ct. at 1170. The same situation does not exist herein. Accordingly, the Court concludes that the physicians must establish their own standing to challenge the legislation herein in advance of a determination of their ability to assert the rights of third parties.
It is apparent that plaintiffs have standing to challenge § 188.045. The requirements of that section subjects them to possible revocation of license and criminal sanctions. See §§ 188.065 and 188.075, R.S.Mo. (1974). The Court must conclude, however, that plaintiffs lack standing to challenge § 188.040. As stated in Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 2838, 49 L.Ed.2d 788 (1976)
The physician-appellants do not contend that this section [188.040] of the Act imposes any obligation on them or that its operation otherwise injures them in fact. They do not claim any interest in the question of who receives custody that is "sufficiently concrete" to satisfy the "case or controversy" requirement of a federal court's Art. III jurisdiction.
Simply because plaintiffs have standing to challenge § 188.045 does not mean that they can assert the rights of third parties, their patients, in order to challenge § 188.040. Before the Court determines whether a plaintiff may assert the rights of third parties, the plaintiff's standing to challenge the legislation must be established. Plaintiffs have not established their standing to challenge § 188.040. Planned Parenthood, supra.
With only § 188.045 remaining, it is clear that plaintiffs' motion for summary judgment must be denied. In Planned Parenthood, supra, the Court held that a state may permissibly require a woman's prior written consent, noting that "it is desirable and imperative that it [the decision to abort] be made with full knowledge of its nature and consequences". Id. at 67, 96 S.Ct. at 2840. Cf., Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (holding that stringent prescription recording requirements do not violate any constitutional rights of physicians).
Accordingly, plaintiffs' motion will be denied.
WEBSTER, Circuit Judge, concurring.
I reluctantly concur.
Section 7 (R.S.Mo.1974 § 188.040) is perhaps the most offensive of the in terrorem clauses that were enacted by the Missouri legislature in 1974, H.C.S. House Bill No. 1211, because it reflects a legislative conclusion that a woman who asserts her constitutional right to an abortion has thereby become unfit for parenthood if the child is somehow born alive. See Planned Parenthood of Central Missouri v. Danforth, 392 F.Supp. 1362, 1377 (E.D.Mo.1975) (Webster, J., dissenting). This patently unconstitutional appendage, totally lacking in due process, survives like the last leaf in winter after Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). It is regrettable that a Jane Doe does not come forward so that this question may be squarely addressed. Plaintiffs say this is unlikely because it is difficult to protect a pregnant woman's anonymity. At this stage, at least, that is an insufficient answer to the presently insurmountable requirement of standing.
NOTES
[1] The reference to section 211.411 should probably read "section 211.441".