Michael FREIMAN, M. D. and Allen S. Palmer, D. O., Appellants,

v.

John D. ASHCROFT, Attorney General of the State of Missouri and J. Brendan Ryan, Circuit Attorney of the City of St. Louis, Missouri, Appellees.

No. 78–1144.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1978.

Decided Sept. 13, 1978.

Rehearing Granted in Part and Denied in Part Oct. 10, 1978.

---

248

Frank Susman of Susman, Schermer, Willer & Rimmel, St. Louis, Mo. (argued), and Barbara L. Beran, St. Louis, Mo., on brief, for appellants.

Michael L. Boicourt, Asst. Atty. Gen., Jefferson City, Mo. (argued), and John D. Ashcroft, Atty. Gen., St. Louis, Mo., on brief, for appellees.

Before STEPHENSON, Circuit Judge, INGRAHAM,* Senior Circuit Judge, and HENLEY, Circuit Judge.

STEPHENSON, Circuit Judge.

The issues before this court are: (1) does appellant-physician Michael Freiman have standing to challenge Mo.Ann.Stat. § 188.-040 (Vernon 1978), and, if so, is section 188.040 constitutional; and (2) is Mo.Ann. Stat. § 188.045 (Vernon 1978) constitutional.

Freiman originally filed suit seeking declaratory and injunctive relief, and moved for summary judgment. The three-judge district court [1] held that Freiman did not have standing to challenge section 188.040. Section 188.040 provides:

> In every case where a live born infant results from an attempted abortion which was not performed to save the life or health of the mother, such infant shall be an abandoned ward of the state under the jurisdiction of the juvenile court wherein the abortion occurred, and the mother and father, if he consented to the abortion, of such infant shall have no

---

* The Honorable Joe M. Ingraham, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Honorable William H. Webster, former United States Circuit Judge for the Eighth Circuit, The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri, and The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

parental rights or obligations whatsoever relating to such infant, as if the parental rights had been terminated pursuant to section 211.411, RSMo. The attending physician shall forthwith notify said juvenile court of the existence of such live born infant. [Section 211.411 probably should read 211.441.]

The court held that Freiman did have standing to challenge section 188.045. Section 188.045 provides:

> Any woman seeking an abortion in the state of Missouri shall be verbally informed of the provisions of section 188.-040 by the attending physician and the woman shall certify in writing that she has been so informed.

The court, however, did not find section 188.045 to be unconstitutional. Thus Freiman's motion for summary judgment was denied. Appellee John D. Ashcroft, Attorney General of Missouri, then moved for summary judgment dismissing this cause, which was granted by the district court.[2]

Because section 188.045 is a violation of the due process and equal protection clauses of the Fourteenth Amendment, we reverse in part.

■ The standing of physicians to challenge section 188.040 of the Missouri statutes was previously litigated in *Planned Parenthood v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1975). In *Danforth*, the Supreme Court denied standing, stating:

> The physician-appellants do not contend that this section of the Act [Mo.Rev. Stat. § 188.040 (Vernon 1978)] imposes any obligation on them or that its operation otherwise injures them in fact. They do not claim any interest in the question of who receives custody that is "sufficiently concrete" to satisfy the "case or controversy" requirement of a federal court's Art. III jurisdiction. *Singleton v. Wulff* [428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1975)]. Accordingly, the physician-appellants do not

have standing to challenge § 7 of the Act [Mo.Rev.Stat. § 188.040 (Vernon 1978)].

*Id.* at 62 n.2, 96 S.Ct. at 2838.

On the basis of the Supreme Court's holding, the three-judge district court in this case held that the *Singleton* requirement of injury in fact was not satisfied sufficiently to establish Freiman's standing to challenge section 188.040. *Freiman v. Ashcroft*, 440 F.Supp. 1193 (E.D.Mo.1977).

This court has also once before commented upon standing of physicians to challenge a very similar statute. In *Hodgson v. Lawson*, 542 F.2d 1350 (8th Cir. 1976), this court considered the constitutionality of Minn.Stat.Ann. § 145.415(3) (Supp.1978), which reads in part: "[W]henever an abortion of a potentially viable fetus results in a live birth, the child shall be an abandoned ward of the state and the parents shall have no parental rights or obligations * * *." *Id.* In *Hodgson*, this court found the statute to be unconstitutional because of its use of the phrase "potentially viable," but we additionally noted:

> The constitutionality of Minn.Stat. § 145.415, subd. 3 * * * is also highly questionable for reasons not advanced by the appellees here. *See Doe v. Rampton*, 366 F.Supp. 189, 193 (C.D.Utah 1973), where a similar statutory provision was struck down because it provided for termination of parental rights without due process of law. *The physician-appellees here, as in Planned Parenthood of Central Missouri v. Danforth* [428 U.S. 52, 62 n.2, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1975)], *would not have standing to challenge subd. 3 because they cannot claim any injury in fact.*

*Hodgson v. Lawson, supra*, 542 F.2d at 1355 n.2 (emphasis added).

The recognition that Freiman has standing to challenge section 188.045 does not alter his lack of standing to challenge section 188.040. Section 188.045 places a duty upon Freiman, and related statutes subject

---

**2.** The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

him to sanctions, including criminal penalties, for failure to perform that duty. *See* Mo.Stat.Ann. §§ 188.065 & .075 (Vernon 1978). His allegations that concern direct injury to him,[3] via the doctor-patient relationship, are all tied to section 188.045; however, the allegations fail to provide a basis for standing to challenge section 188.-040. Because Freiman must establish his own standing as a prerequisite to asserting the rights of his patients, *see Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1975), the constitutionality of the statute which provides for termination of parental rights cannot be dealt with here. This disposal is not without difficulty, for as Judge Webster, in his concurrence in the lower court opinion points out, "[Section 188.040] is perhaps the most offensive of the *in terrorem* clauses that were enacted by the Missouri legislature in 1974 * *. This patently unconstitutional appendage, totally lacking in due process, survives like the last leaf in winter after *Planned Parenthood of Central Missouri v. Danforth*, [*supra*] * * *. It is regrettable that a Jane Doe does not come forward so that this question may be squarely addressed." *Freiman v. Ashcroft, supra*, 440 F.Supp. at 1195 (Webster, J., concurring).

■ Freiman, as the three-judge district court recognized, does have standing to challenge section 188.045. *Id.* The district court erred, however, when it held section 188.045 constitutional on the basis of *Danforth's* provision that a state may permissibly require a woman's prior informed consent for an abortion.[4] *Freiman v. Ashcroft,*

No. 76–616C(3) (E.D.Mo. filed Feb. 17, 1978).

The Supreme Court in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), recognized that a fundamental constitutional right of personal privacy exists.

> This right of privacy * * * is broad enough to encompass a woman's decision whether or not to terminate her pregnancy. The detriment that the State would impose upon the pregnant woman by denying this choice altogether is apparent. Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it. In other cases, as in this one, the additional difficulties and continuing stigma of unwed motherhood may be involved. All these are factors the woman and her responsible physician necessarily will consider in consultation.

*Id.* at 153, 93 S.Ct. at 727. Although the privacy right is not absolute, and is therefore subject to the state's interests in the health and welfare of its citizens, "[w]here certain 'fundamental rights' are involved, the Court has held that regulation limiting these rights may be justified only by a 'compelling state interest,' * * * and

---

3. In particular, plaintiff alleges in his affidavit:

   4. The possibility of a live birth resulting from an abortion performed within the present medical practice of plaintiff is totally non-existent [within first trimester] and has never occurred in recorded medical history; and yet, the duty imposed by the legislation herein challenged is highly adverse to the best health interests of his patients and has the reasonable possibility of having catastrophic effects upon some patients.

   5. * * * The provisions as to the termination of parental rights is highly disturbing to the patient and increases her anxiety during the medical procedure, thereby raising the risks of mortality and morbidity to her.

6. * * * requires the physician by law to provide information to the patient which is adverse to the customary practice of medicine, which he does not believe to be in her best interests, and which requires the physician to jeopardize the health, interests and safety of his patient.

4. After the three-judge district court denied Freiman's motion for summary judgment, Freiman amended his complaint by deleting the request for injunctive relief. The district court then granted Ashcroft's motion for summary judgment holding section 188.045 constitutional.

that legislative enactments must be narrowly drawn to express only the legitimate state interest at stake." *Id.* at 155, 93 S.Ct. at 728.

The legitimate state interest at stake here is protecting the mother by requiring an informed consent to the abortion decision. The Court in *Danforth* held that Mo. Ann.Stat. § 188.020(2) (Vernon 1978),[5] Missouri's informed consent provision, was not "in itself an unconstitutional requirement. The decision to abort, indeed, is an important, and often a stressful one, and it is desirable and imperative that it be made with full knowledge of its nature and consequences." *Planned Parenthood v. Danforth, supra,* 428 U.S. at 67, 96 S.Ct. at 2840. But the Supreme Court did not hold that a state may require physicians to provide to each patient any and all information required by the state, regardless of its legality, truth, constitutionality or medical advisability.[6] "[W]e are content to accept, as the meaning [of informed consent], the giving of information to the patient as to just what would be done and as to its consequences. To ascribe more meaning than this might well confine the attending physician in an undesired and uncomfortable straitjacket in the practice of his profession." *Planned Parenthood v. Danforth, supra,* 428 U.S. at 67 n. 8, 96 S.Ct. at 2840. Section 188.045 is not sufficiently "narrowly drawn to express only the legitimate state interests at stake." *Roe v. Wade, supra,* 410 U.S. at 155, 93 S.Ct. at 728.

The information that section 188.045 requires the physician to relate to his patient prior to an abortion operation would most certainly put the physician in a straitjacket. It first requires the physician to warn his patient of consequences that should not oc-

cur, as the Missouri Act was written to prevent just such an event. The statutes provide that no abortion may be performed—unless it is to preserve the life or the health of the mother—without the physician first certifying that the fetus is not viable.[7] Section 188.040's provision for termination of parental rights only occurs if a live born infant results from an attempted abortion which was not performed to save the life or health of the mother. Thus, the warning, that if a live born infant results parental rights will be terminated, is for all practical purposes meaningless. By definition, this should not result.

Secondly, although requiring the physician to tell his patient what will be done to accomplish the abortion and what the consequences will be assists the patient in being able to give an informed consent, *Planned Parenthood v. Danforth, supra,* 428 U.S. at 66–67, 96 S.Ct. 2831, the requirement that the physician tell his patient of section 188.040 is not reasonably related to the purpose of informed consent. Initially, section 188.045 makes no distinction between trimesters and thus is overbroad. Then the statute which section 188.045 requires the physician to relate to his patient is patently a denial of procedural due process,[8] and further, there is no record of an unsuccessful abortion performed during the first 12 weeks of gestation resulting in a live born infant. The result of a physician's warning would be to inject into the decision-making process between physician and patient a factor which is irrelevant and extraneous to the medical services being rendered. Section 188.045's imposition upon the physician to inform his patient of section 188.040 is a violation of the equal protection clause of the Fourteenth Amendment inasmuch as it singles out the abor-

---

5. Section 188.020(2) provides in part:

    No abortion shall be performed prior to the end of the first twelve weeks of pregnancy except:

        \*    \*    \*    \*    \*    \*

    (2) After the woman, prior to submitting to the abortion, certifies in writing her consent to the abortion and that her consent is informed and freely given and is not the result of coercion[.]

6. Appellees admitted in oral argument that there has never been a live birth during the first 12 weeks of gestation and that under the present state of medical science it is impossible.

7. Mo.Ann.Stat. § 188.030 (Vernon 1978).

8. *See Wynn v. Scott,* 449 F.Supp. 1302, 1322–24 (N.D.Ill.1978).

tion operation for the imposition of this "straitjacket" requirement. It is a violation of the due process clause because of the invasion into the delicate and private physician-patient relationship. Requiring the physician to relate section 188.040 interferes with the woman's right to consult with her physician concerning her decision of abortion without undue restriction by the state. *See Wynn v. Scott, supra*, 449 F.Supp. at 1316–17. Thus this court finds section 188.-045 to be unconstitutional.

Affirmed in part; reversed in part.